**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ARTHUR THOMAS, | |
| Plaintiff, | Civil Action No. 19-13990 (ES) |
| v. | OPINION |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

MᴄNᴜʟᴛʏ, Dɪsᴛʀɪᴄᴛ Jᴜᴅɢᴇ

Before the Court is the appeal of plaintiff Arthur Thomas from the decision of Administrative Law Judge Peter R. Lee ("ALJ Lee"), to the extent that it denied Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits. The upshot of the convoluted procedural history was a determination by the Secretary that until August 2, 2015, Plaintiff was not disabled under the Social Security Act (the "Act"). 42 U.S.C. §§ 1381 *et. seq.* (D.E. No. 1, Compl.). As of August 2, 2015, however, Mr. Thomas's age category changed, in effect lowering the bar for a finding of disability. The Secretary ruled that from that date forward, he was disabled. Mr. Thomas appeals from the adverse portion of the Secretary's decision; unless otherwise specified, the discussion herein should be understood to relate to the denial of benefits for the period preceding August 2, 2015.

The matter was reassigned from Judge Salas to me for purposes of this decision. The Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and decides this matter without oral argument, pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 9.1(f).  For the reasons set forth herein, the decision of the Commissioner of Social Security (the "Commissioner") is affirmed.

# I.   FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff, Mr. Thomas, was born on August 3, 1965. (R. 50). He has held the following past employment positions: lead driver, 2010; building maintenance repair, 2009; detailer specialist, 2004-2005; and security, 2005. (R. 55).

On March 26, 2012, Plaintiff filed applications for DIB and SSI benefits beginning on July 31, 2010, based on arthritis of the knees, high blood pressure, and a heart condition. (R. 50, 133-40, 160). The claims were denied initially and on reconsideration.  (R. 86-91, 93-95).  Plaintiff subsequently filed a request for a hearing before an ALJ (R. 99-100), which was held on November 22, 2013 before ALJ Richard West ("ALJ West"). (R. 23-48).

ALJ West issued a decision denying Plaintiff's applications on February 19, 2014. (R. 9-22).  ALJ West made several determinations in connection with the required five-step analysis, including the following: 1) Plaintiff has not engaged in substantial gainful activity since July 31, 2010; 2) Plaintiff's hypertension, obesity, osteoarthritis of his knees, status post left knee total knee replacement, and coronary artery disease constitute severe impairments; 3) Plaintiff's impairments, singly or in combination, did not meet or medically equal

the severity of any impairments in Appendix 1 of the Social Security Regulations; 4) Plaintiff has the residual functional capacity ("RFC") to perform sedentary work including "occasionally balance, kneel and stoop," but "cannot climb ladders, ropes or scaffolds," or "crouch or crawl"; 5) Plaintiff is unable to perform any past relevant work; and that 6) there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. 14-19). The Appeals Counsel denied review on April 13, 2015. (R. 1-8).

On May 12, 2015, Plaintiff filed an appeal to the District Court, challenging ALJ West's step three, RFC, and step five findings. (Civil Action No. 2:15-cv-3288); (R. 350-52). On February 18, 2016, the Honorable Jose L. Linares issued an Opinion and Order remanding the matter to the Commissioner for further proceedings. (Civil Action No. 2:15-cv-3288); (R. 353-67). Specifically, Judge Linares ordered remand based on ALJ West's analysis at steps three and five. As to step three, he reasoned as follows:

> Although the ALJ found Plaintiff's obesity to be a severe impairment, he did not state that he considered obesity in his step three analysis, referring to Plaintiff's impairments only generally in that section.
>
> * * * *
>
> Because the ALJ cited to Dr. Eyassu's opinion, which by implication considered the impact of Plaintiff's obesity and SSR 02-1p, without explanation for how he considered the ruling, the Court will remand the matter for further consideration and/or explanation of Plaintiff's obesity in combination with his other impairments.

(R. 360-63). And in connection with the step five analysis, Judge Linares relied on *Allen v. Bernhart*, 417 F.3d 396, 407-08 (3d Cir. 2005):

> The *Allen* Court made clear that "if the Secretary wishes
> to rely on an SSR as a replacement for a vocational
> expert, it must be crystal-clear that the SSR is probative
> as to the way in which the nonexertional limitations
> impact the ability to work, and thus, the occupational
> base.
>
> * * * *
>
> . . . Although the ALJ accurately quotes the first portion
> of [SSR 96-9P], he does not address the requirement to
> explain the balance limitations. On remand, the ALJ
> should address Plaintiff's balance limitations consistent
> with the SSR and/or obtain vocational expert
> testimony.

(R. 364-66).

On September 7, 2016, a second hearing was conducted before ALJ West.
(R. 311-29). On September 21, 2016, ALJ West determined that Plaintiff was
not disabled from July 31, 2010 to August 1, 2015 and denied Plaintiff's
application for DIB and SSI for that period. (R. 293-310).

At step one, ALJ West determined that Plaintiff had not engaged in
substantial gainful activity since July 31, 2010. (R. 299). At step two, ALJ West
concluded that Plaintiff had the following severe impairments: hypertension,
obesity, osteoarthritis of the knees, status post left knee total lee replacement,
coronary artery disease and hyperlipidemia. (*Id.*). At step three, ALJ West
determined that Plaintiff did not have an impairment or combination of
impairments that met or equaled the severity of one of the impairments listed in
Appendix 1 of the applicable regulations. (R. 300). ALJ West "fully considered
obesity in the context of the overall record in making this decision" pursuant to

the listings contained in sections 1.00Q, 3.00I, and 4.00F. (*Id.*). Applying that

analysis, ALJ West concluded as follows:

> The claimant's knee osteoarthritis and post status total left knee replacement do not rise to the level of meeting medical listing 1.02 given that the evidence e does not demonstrate significant gross anatomical deformity resulting in an inability to ambulate effectively.
>
> The claimant's coronary heart disease did not rise to the level of meeting or equaling medical listing 4.04 prior to August 24, 2000. Specifically, the record does not support a finding of the required sign-or-symptom limited exercise test findings; of documented impaired myocardial function with left ventricular ejection fraction of 30 percent or less with a physician's indication of marked limitation of physical activity accompanied by a conclusion that performance of exercise testing would present a significant risk to the individual; or coronary artery disease with the requisite angiographic evidence of narrowing or obstruction resulting in marked limitation of physical activity.

(*Id.*).

At step four, ALJ West performed a lengthy analysis, ultimately

determining that Plaintiff had the RFC to perform "sedentary work" . . . "except

the claimant: cannot climb ladders, ropes or scaffolds; cannot crouch of crawl;

can perform other postural functions occasionally; can occasionally balance; can

occasionally stand or walk on any terrain given his ability to balance

occasionally; and must avoid concentrated exposure to extreme cold, he[at] and

humidity. (R. 299-304). ALJ West found that, "[g]iven a number of limitations,

including being limited to only occasionally walking," since July 31, 2010,

Plaintiff has been unable to perform any past relevant work. (R. 302).

At step five, ALJ West found that Mr. Thomas did not meet the definition

of disability in the period preceding August 2, 2015, when he had not yet attained

50 years of age:

> Prior to the established disability onset date, the claimant was a younger individual age 45-49. On August 2, 2015, the claimant's age category changed to an individual closely approaching advanced age (20 CFR 404.1563 and 416.963).
>
> * * * *
>
> Prior to August 2, 2015, transferability of job skills is not material to the determination of disability because using Medical Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferrable job skills. Beginning on August 2, 2015, the claimant has not been able to transfer job skills to other occupations [].
>
> Prior to August 2, 2015, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed [].

(R. 302-03). Accordingly, ALJ West found that Plaintiff "was not disabled prior to

August 2, 2015 but became disabled on that date and has continued to be

disabled through the date of this decision."  (R. 304).

Mr. Thomas appealed ALJ West's second determination to the District

Court (Civil Action No 2:16-cv-9247), which resulted in a consent order to

remand, dated August 24, 2017. (R. 741-42). On remand, on August 7, 2018,

the Appeals Council issued a new decision affirming ALJ West's determination

that Plaintiff was disabled starting as of August 2, 2015. (R. 745-46). It vacated

and remanded ALJ West's decision "only with respect to the period prior to

August 2, 2015." (R. 745).  The Appeals Council ordered that a new hearing be

conducted before a new ALJ to specifically address the following issues:

> Comply with the prior court order and give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to the evidence of record in support of the assessed limitations [].
>
> If warranted by the extended record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base [] and to determine whether the claimant has acquired any skills that are transferable to other occupations under the guidelines []. The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy []. Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titled (DOT) and its companion publication, the Selected Characteristics of Occupations [].

(R. 746).

On January 28, 2019, a third hearing was held, this time before ALJ Lee. (R. 686-722). ALJ Lee issued a decision on February 25, 2019, finding that Plaintiff had not been disabled from July 31, 2010 through August 1, 2015. (R. 678).

Plaintiff filed this, his current appeal, on June 19, 2019. (D.E. No. 1, Compl.). On November 25, 2019, the administrative record was filed. (D.E. 6, R.). After being granted several extensions, Plaintiff filed his main brief on appeal on June 16, 2020. (D.E. No. 15 ("Pl. Mov. Br.")). Defendant filed an opposition brief on July 27, 2020. (D.E. No. 16 ("Def. Opp. Br.")). The matter is fully briefed and

ripe for decision.

## II.   LEGAL STANDARD

### A.   Standard of Review

The Court reviews an ALJ's application of the law *de novo* and all factual findings for "substantial evidence."  *See* 42 U.S.C. § 405(g); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).  Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance."  *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).   While failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision."  *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).

Courts are bound by the ALJ's findings of fact that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently."  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  "Where evidence in the record is susceptible to more than one rational interpretation, [the Court] must accept the Commissioner's conclusions."  *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 283 (3d Cir. 2006).  Thus, this Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder."  *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

**B.      Determining Entitlement to Social Security Benefits**

To qualify for benefits under the Act, the claimant must first establish that he[1] is "disabled."  42 U.S.C. § 1381. A claimant is disabled only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A).  A physical or mental impairment is defined by the Act as an "impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42. U.S.C. § 423(d)(3).  Under the Act, "a disability is established where the claimant demonstrates that there is some medically determinable basis for an impairment that prevents [the individual] from engaging in any substantial gainful activity for a statutory twelve-month period."  *Fargnoli v. Halter,* 247 F.3d 34, 38–39 (3d Cir.2001) (internal citations and quotations omitted).

In analyzing whether a disability exists under the Acta five-step sequential evaluation process is followed.  *See* 20 C.F.R. § 416.920.  First, the plaintiff must demonstrate that he has not engaged in any substantial gainful activity since the onset date of his severe impairment.    20 C.F.R. §§ 404.1520(a)(4)(i) & 416.920(a)(4)(i).  Substantial gainful activity is defined as significant physical or mental activities that are usually done for pay or profit.  20 C.F.R. §§ 404.1572(a)

---

[1]      Solely because this plaintiff happens to be male, I will not alter the regulations' use of male pronouns to refer to a generic claimant.

& 416.972(a), (b).  If an individual engages in substantial gainful activity, he is not disabled under the regulation, regardless of the severity of his impairment or other factors such as age, education, and work experience.  20 C.F.R. §§ 404.1520(b) & 416.920(b).  If the plaintiff demonstrates that he has not engaged in substantial gainful activity, the analysis proceeds to step two.

Second, the plaintiff must demonstrate that his medically determinable impairment or the combination of his impairments is "severe."  20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(4)(ii).  A "severe" impairment significantly limits a plaintiff's physical or mental ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c) & 416.920(c).  An impairment or combination of impairments does not satisfy this threshold if medical and other evidence only establishes slight abnormalities which have no more than a minimal effect on an individual's ability to work.  *See Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003).

Third, the ALJ must assess the medical evidence and determine whether the plaintiff's severe impairment(s) (alone or in combination) meet or equal an impairment listed in the Social Security Regulations' "Listings of Impairments" in 20 C.F.R. § 404, Subpart P, Appendix 1 ("Listing").  *See* 20 C.F.R. §§ 404.1520(a)(4)(iii) & 416.920(a)(4)(iii).

If a plaintiff is not found to be disabled at step three, the analysis continues to step four.  However, before reaching step four, the ALJ must first determine a plaintiff's RFC.  A plaintiff's RFC is the most that a plaintiff can do despite his limitations; all relevant evidence is considered.  20 C.F.R. § 416.945(a).  At step

four, the ALJ determines whether the plaintiff's RFC permits him to perform his past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv) & 416.920(a)(4)(iv).  If the plaintiff lacks the RFC to perform any work he had done in the past, the analysis proceeds to step five.

In the fifth and final step, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the plaintiff can perform based on his age, education, work experience, and RFC.  20 C.F.R. §§ 404.1520(a)(4)(v) & 416.920(a)(4)(v).

## III.   DISCUSSION

### A. ALJ Lee's Final Decision

At step one, ALJ Lee determined that Plaintiff had not engaged in substantial gainful activity since July 31, 2010. (R. 673). At step two, ALJ Lee concluded that Plaintiff had the following severe impairments: coronary artery disease, hyperlipidemia, hypertension, osteoarthritis of the knees, status post left knee total lee replacement, obesity, and sleep apnea. (*Id.*).  At step three, ALJ Lee determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the impairments listed in Appendix 1 of the applicable regulations.  (R. 673-74).

Specifically, ALJ Lee considered Listing 1.02, entitled joint dysfunction, and determined that "the claimant's impairments involving his knees do not rise to the Listing-level."  (R. 674). ALJ Lee also considered Listing 4.04(C), for coronary artery disease, but found that "the medical evidence does not support the Listing criteria." (*Id.*).

11

ALJ Lee determined that Plaintiff had the RFC to perform less than the full range of sedentary work, adding the following limitations:

> [T]he claimant can never climb ropes, ladders or scaffolds; never be exposed to unprotected heights or hazardous machinery; occasionally climb stairs and ramps; never crawl; occasionally stoop and crouch; occasionally push and pull; occasionally balance; and, never have exposure to extremes in environmental conditions. In addition, the claimant can sit for up to six hours in an eight-hour work day, with the option to stand or change position; and, can stand and/or walk for two hours in an eight hour work day.

(R. 674). At step four, ALJ Lee found that, since July 31, 2010, Plaintiff has been unable to perform any past relevant work, as actually or generally performed. (R. 676).

At step five, ALJ Lee determined that there was work in the national economy that the claimant, despite his limitations, could perform:

> the claimant's ability to perform all or subsequently all of the requirements of this level of work has been impeded by additional limitations[, so he] asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.

> The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative Light occupations such as: Addressing Clerk (DOT 209.587-010) which is Unskilled with a SVP 2 and of which are 8,000 jobs available; Order Clerk (DOT 209.567.014) which is Unskilled with an SVP 2 and which there are 21,000 jobs available; and, Document Preparer (DOT 249.587-018) which is Unskilled with an SVP 2 and of which there are 21,000 jobs available. Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

> Based on the testimony of the vocational expert, I
> conclude that, considering the claimant's age,
> education, work experience, and residual functional
> capacity, the claimant is capable of making a successful
> adjustment to other work that exists in significant
> numbers in the national economy. . .

(R. 302-03). Accordingly, ALJ Lee found that Plaintiff was not disabled from July 31, 2010 through August 1, 2015. (R. 678).

### B.   Plaintiff's Arguments

#### i.   Step Three

Mr. Thomas first argues that ALJ Lee's step-three analysis is not based on substantial evidence and that he failed to comply with controlling regulations when he failed to consider Plaintiff's obesity alone and in combination with Plaintiff's other impairments, as was ordered by the District Court and the Appeals Council. (Pl. Mov. Br. 19).

In Judge Linares's February 16, 2016 decision made it clear that the Court was not satisfied with ALJ West's step-three analysis:

> Although the ALJ found Plaintiff's obesity to be a severe
> impairment, he did not state that he considered obesity
> in his step three analysis, referring to Plaintiff's
> 'impairments' only generally in that section.

(R. 361.) Judge Linares cited to *Diaz v. Comm'r Soc. Sec.* 577 F.3d 500, 504 (3d Cir. 2009) and *Mason v. Colvin*, No. 15-1861, 2015 WL 6739108 (D.N.J. Nov. 3, 2015), as follows:

> In *Diaz*, the Third Circuit found the "AU's citation of
> reports by doctors who were aware of Diaz's obesity"
> insufficient to meet this requirement. *Id.* The Third
> Circuit stated: "Were there any discussion of the
> combined effect of Diaz's impairments, we might agree

with the District Court. However, absent analysis of the cumulative impact of Diaz's obesity and other impairments on her functional capabilities, we are at a loss in our reviewing function." *Id.* & n.3 (emphasis in original) (collecting cases reaching a similar conclusion). This Court agrees with *Mason v. Colvin*, No. 15-1861, 2015 WL 6739108 (D.N.J. Nov. 3, 2015), regarding the acceptable level of explanation where obesity is an impairment to be considered. The Court in *Mason* held:

> [T]he ALJ did consider Plaintiffs obesity in combination with her other impairments. She explicitly said, 'I have considered the potential impact of obesity in causing or contributing to co-existing impairments as required by Social Security Ruling 02-Olp.' The AU went on to quote the Ruling at length, and then explain how obesity can impact other impairments, such as respiratory ailments. The AU concluded her discussion by finding that Plaintiff's obesity in combination with her other impairments would in fact not allow her to perform any level of work besides light work. This amount of discussion satisfies the Third Circuit's mandate for enough discussion 'sufficient to enable meaningful judicial review.'

(R. 362) (internal citations omitted). Judge Linares then ordered remand, specifically to allow for "further consideration and/or explanation of Plaintiff's obesity in combination with his other impairments." (R. 360-63). Additionally, on August 7, 2018, the Appeals Council ordered ALJ Lee to

> [c]omply with the prior court order and give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to the evidence of record in support of the assessed limitations [].

(R. 746).

On remand from the Appeals Council, ALJ Lee determined at step three

that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the impairments listed in Appendix 1 of the applicable regulations.  (R. 673-74). Specifically, ALJ Lee considered Listing 1.02, entitled joint dysfunction, and determined that "the claimant's impairments involving his knees do not rise to the Listing-level." (R. 674). ALJ Lee also considered Listing 4.04(C), for coronary artery disease, but found that "the medical evidence does not support the Listing criteria." (*Id.*).

There is unfortunately no mention of Plaintiff's obesity in ALJ Lee's step-three analysis. That omission must be understood, however, in light of the peculiar procedural history. Judge Linares remanded the matter for consideration of obesity, and it *was* considered, after a hearing, in ALJ West's second decision:

> As directed by the District Court- with regard to an assessment of the impact of the claimant's obesity on his residual functional capacity- the claimant testified at the initial hearing that he was 5'8 tall and 219 pounds. This is a Body Mass Index of 33, which does constitute obesity but is well short of morbid obesity. As noted in the prior Administrative Law Judge Decision (Exhibit 9A), the claimant testified that (at this weight) he could stand for 20 minutes and sit for an hour. Consequently, although obesity has been considered in combination with the other impairments, it does not provide a basis for a conclusion that the claimant could not perform sedentary-level exertional work.

(R. 302).

What followed was, in effect, a brief detour to district court, and a second remand on consent—in effect, a resumption of Judge Linares's remand, which had not been fully implemented—resulting in further proceedings before ALJ

15

Lee. That consent remand, in my view, did not reset the counter to zero on all issues; some had already been dealt with. True, the Appeals Council directed the ALJ to "comply" with Judge Linares's order, but it focused on the issue of residual functional capacity, and I do not believe that this required disregard of all that had gone before.

The Court thus finds that ALJ Lee's failure to discuss obesity at step three is at most harmless, for three reasons:

First, obesity had already been considered by ALJ West after Judge Linares's remand. ALJ Lee's step three findings did not differ in any significant regard from those of ALJ West, who "fully considered obesity in the context of the overall record in making this decision." (R. 300). ALJ Lee begins his decision he begins by highlighting in the procedural history section that this case was before him on remand from the Appeals Council, which specifically directed ALJ Lee to "*further consider* the claimant's limitation involving balancing for the period prior to August 2, 2015." (R. 671). Overall, I accept that ALJ Lee was fully cognizant of what had gone before.

Second, ALJ Lee's RFC analysis explicitly considers the overall effect of obesity, though not at step three. In connection with the RFC determination, ALJ Lee notes that "the claimant alleges that he is limited in his ability to work due to obesity, arthritis of the knees and high blood pressure and a heart condition." (R. 675). His step five analysis, too, explicitly states that "obesity has been considered in combination with the other impairments." (*Id.*). Such statements might better have been inserted at step three as well, but they sufficiently clarify

that Judge Lee considered obesity. Thus, for example, in *Diaz v. Comm'r Soc. Sec.* 577 F.3d 500 (3d Cir. 2009), relied on by Judge Linares, the Third Circuit reversed, but stated: "Were there any discussion of the combined effect of Diaz's impairments, we might agree with the District Court. However, absent analysis of the cumulative impact of Diaz's obesity and other impairments on her functional capabilities, we are at a loss in our reviewing function." *Id.* at 504 & n.3; *see also Mason v. Colvin*, No. 15-1861, 2015 WL 6739108 (D.N.J. Nov. 3, 2015) (affirming, noting that "the ALJ did consider Plaintiffs obesity in combination with her other impairments. She explicitly said, 'I have considered the potential impact of obesity in causing or contributing to co-existing impairments as required by Social Security Ruling 02-Olp.' ") ALJ Lee's decision as a whole, particularly in its procedural context, reflects "sufficient development of the record and explanation of findings" to allow meaningful review.   *See Burnett*, 220 F.3d at 119; *Jones*, 364 F.3d at 505.

Third, given the full airing of issues here, Plaintiff fails to show how the outcome would have been different if ALJ Lee had discussed obesity at step three. "Ordinary harmless error review . . . is applicable to administrative appeals." *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x. 810, 814 (3d Cir. 2016) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).  Where, as here, a plaintiff alleges error by the ALJ, "the burden of showing harmfulness is normally on the party attacking the agency's determination."   *See Shinseki*, 556 U.S. at 398.  This means that Plaintiff must explain how he "might have prevailed at step three if the ALJ's analysis have been more thorough."   *Holloman*, 639 F. App'x at 814.

Specifically, Plaintiff must "affirmatively point[] to specific evidence that demonstrates he should succeed at step three." *Woodson v. Comm'r Soc. Sec.,* 661 F. App'x 762, 766 (3d Cir. 2016); *see also Rutherford v. Barnhart,* 399 F.3d 546, 553 (3d Cir.2005) (the Court noting that the claimant "has not specified how that factor would affect the five-step analysis undertaken by the ALJ, beyond an assertion that her impairment makes it more difficult for her to stand, walk and manipulate her hands and fingers. That generalized response is not enough to require a remand[.]").

Plaintiff, now with the benefit of multiple opportunities, has failed to point to medical or other evidence that obesity so aggravated his other, listed conditions that he would have prevailed at step three. And, as noted in the following section, the ALJ performed a "bottom line" analysis of Plaintiff's residual functional capacity, a further backstop to the screening process of step three. Thus, the Court finds that Plaintiff has failed to meet his burden on this portion of his appeal.

### ii. RFC

Likewise, Mr. Thomas argues that ALJ Lee failed to properly include a discussion of obesity in analyzing Plaintiff's RFC. (Pl. Mov. Br. 29-31). The Secretary responds that "by limiting Plaintiff to a restricted range of sedentary work (rather than his prior light and medium work) in both the 2016 and 2019 decisions," ALJ Lee clearly did take obesity into account. (R. 15).

A plaintiff's RFC sets forth the most that a plaintiff can do despite his limitations. 20 C.F.R. § 416.945(a). When making an RFC determination, an

ALJ is required to consider all evidence. *Burnett*, 220 F.3d at 121. However, an ALJ need not rehash or discuss "every tidbit of evidence included in the record," *Hur v. Barnhart*, 94 Fed. App'x. 130, 133 (3d Cir. 2004), so long as "the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors" in reaching his conclusions. *Jones*, 364 F.3d at 505.

ALJ Lee determined that Plaintiff had the RFC to perform "sedentary work" with certain exceptions:

> [T]he claimant can never climb ropes, ladders or scaffolds; never be exposed to unprotected heights or hazardous machinery; occasionally climb stairs and ramps; never crawl; occasionally stoop and crouch; occasionally push and pull; occasionally balance; and, never have exposure to extremes in environmental conditions. In addition, the claimant can sit for up to six hours in an eight-hour work day, with the option to stand or change position; and, can stand and/or walk for two hours in an eight hour work day.

(R. 674). In reaching this conclusion, ALJ Lee noted that "the claimant alleges that he is limited in his ability to work due to *obesity*, arthritis of the knees and high blood pressure and a heart condition." (R. 675 (emphasis added)). Plaintiff asserted that his conditions were worsening, highlighting shortness of breath. The ALJ cited contrary evidence in the record that Mr. Thomas "was able to prepare meals and perform light household chores. He also reported being able to use public transportation, shop in stores and engage in social activity." (*Id.*). ALJ Lee noted the 2012 physical consultative examination which showed that Plaintiff then had a full range of motion in the upper extremity, that fine motor activity was normal, and that his hip, ankle, and spinal range of motion was

"full." (R. 675).

In addition to the objective medical evidence, ALJ Lee also considered several medical opinions and explained the weight he accorded to each.  (R. 675-76); *see Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001) ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence that he rejects and his reason(s) for discounting that evidence.") (citing *Burnett*, 220 F.3d at 121). His analysis was careful and balanced.

For example, ALJ Lee made a plaintiff-favorable decision to give little weight to the State Agency DDS medical consultants' finding that Plaintiff is capable of light exertion. Those consultants, he wrote, "did not perform an in-person evaluation of the claimant and did not have the benefit of additional medical evidence that became part of the record." (R. 676).

The ALJ adequately stated his reasons for giving some, but only partial, weight to another consultative examiner's opinion. That report found that the claimant is limited from activities requiring moderate-to-marked exertion secondary to Plaintiff's chest pain and limitation in squatting and kneeling, activity with prolonged stair climbing, activity with sustained pulling and pushing, and lifting. But that opinion, the ALJ wrote, "is only based on one examination and does not set forth function-by-function vocational limitations." (*Id.*).

Dr. Shehadeh's opinion on the Work First NJ form was given limited weight because it was not fully supported, was rendered under the standards of a

different program, and was stated in conclusory fashion. (*Id.*). These are all legitimate considerations.

ALJ Lee stated that he based his RFC determination on a review of "all of the medical evidence available after hearing the claimant's testimony," listing in particular the claim of obesity. (*Id.*). The RFC represents a bottom-line determination of what functions the claimant, given his limitations, can perform. That analysis was undertaken here. What is more, ALJ Lee significantly revised the prior RFC, confirming that he analyzed the matter afresh. ALJ Lee found that Plaintiff could crouch occasionally, and added that Plaintiff can occasionally: climb stairs and ramps, push and pull, sit up for six hours in a eight hour work day, with the option to stand or change position, stand and/or walk for two hours in an eight hour work day, but that Mr. Thomas cannot be exposed to unprotected heights or hazardous machinery. All of these findings were absent from, or significantly different in, ALJ West's prior decision. (*See* R. 301-02) ("ALJ West noting that the evidence in the record "does not provide a basis for a conclusion that the claimant could not perform sedentary-level exertional work."); (*see also* R. 676) (ALJ Lee noting that the evidence supports an RFC "categorized as *less than* full range sedentary work."). That revision confirms that the ALJ discharged, and was not merely giving lip service to, the duty to review all evidence of impairments.

I find that ALJ Lee's RFC determination was supported by substantial evidence in the record as whole.  The ALJ sufficiently explained why objective

Case 2:19-cv-13990-ES   Document 17   Filed 03/08/21   Page 22 of 22 PageID: 987

evidence undercut Plaintiff's subjective complaints, and also adequately explained the weight he accorded each piece of opinion evidence.

The Court cannot reweigh evidence and does not do so. *See Williams*, 970 F.2d at 1182; *Morales*, 225 F.3d at 317. Finding that ALJ Lee's RFC analysis was supported by substantial evidence, I must affirm it.

### C.    Step Five

Mr. Thomas argues that it was error to rely on the vocational expert's testimony because it was "based on ALJ hypotheticals which assume plaintiff's ability to sustain the exertional demands of sedentary work activity." (Pl. Mov. Br. 31-32). In short, this is a repackaging of Plaintiff's objections to the RFC. I have, however, already determined that the RFC finding must be upheld, so it was proper to pose hypotheticals to the vocational expert based on that RFC. I therefore uphold the step five determination.

## IV.    CONCLUSION

For the foregoing reasons, the Court affirms the decision of the Commissioner of Social Security.   An appropriate Order accompanies this Opinion.

Dated: March 8, 2021

/s/ Kevin McNulty

_____
**Kevin McNulty**
**United States District Judge**